UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

_____

| | | |
|---|---|---|
| **JOEY LEE NIX,** | : | |
| | : | Case No. 3:20-cv-00250-BJD-JBT |
| **Plaintiff,** | : | |
| | : | |
| v. | : | *Memorandum of Law* |
| | : | |
| **CSX TRANSPORTATION, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

_____

**MEMORANDUM OF LAW
IN RESPONSE TO DEFENDANT'S MOTION IN LIMINE**

**I.    INTRODUCTION**

Plaintiff, JOEY LEE NIX, respectfully submits this Memorandum of Law in opposition to Defendant's motion in limine to preclude Plaintiff from presenting his treating provider, Ann Priddy, L.C.S.W., as an expert witness at trial. Defendant appears to be operating under a fundamental misunderstanding of Plaintiff's case and argument. Plaintiff does not assert, and has not asserted, that his firing by Defendant caused his posttraumatic stress disorder (PTSD). Rather, Plaintiff asserts, and always has asserted, that the firing exacerbated his already-existing PTSD. In any event, the cause and degree of Plaintiff's PTSD has nothing to do with Priddy's qualifications to

testify as an expert. Thus, the Court should reject Defendant's pretrial attempt to preclude her from testifying.

**II.    LAW**

Rule 702 of the Federal Rules of Evidence provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts" of the case on trial.

This can be summed up as a requirement that the expert is qualified to testify competently regarding the matters she intends to address; that the expert's methodology is sufficiently reliable; and that the testimony would assist the jury, through the application of scientific or other specialized expertise, to understand the evidence or determine a disputed fact. See Hendrix v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010); Rink v. Cheminova, Inc., 400 F.3d 1286, 1291-92 (11th Cir. 2005). This has been summed up as "qualification, reliability, and helpfulness." See Rosenfeld v.

Oceania Cruises, Inc., 654 F.3d 1190, 1193 (11th Cir. 2011); United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004).

In Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), the Supreme Court held that a proposed expert's testimony must have "a grounding in the methods and procedures of science," rather than "subjective belief or unsupported speculation."  The expert must have "good grounds" for her opinion.  See Daubert, 509 U.S. at 590.  The standards set forth in Daubert operate as a general framework, not a rote litany, to ensure the reliability and relevance of expert testimony.  This is true whether the expert relies on scientific principles, or gains her knowledge from skill- or experience-based observation.  See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 151 (1999).  It is the trial court's role to act as a gatekeeper in scrutinizing the evidentiary relevance and reliability of the proposed expert submission.  See Daubert, 509 U.S. at 596-97; Hendrix, 609 F.3d at 1193; Rink, 400 F.3d at 1291.

In determining under the first step of the Rule 702 inquiry whether the expert is properly *qualified*, courts generally look to evidence of the witness's education and experience, and inquire whether the subject matter of the witness's proposed testimony is sufficiently within her expertise.  See In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig., 711 F. Supp. 2d 1348, 1367 (M.D. Ga. 2010).

In the second step, the Court must determine whether the expert's testimony is *reliable*. The Court's inquiry must focus "solely on principles and methodology, not on the conclusions that they generate." See <u>Daubert</u>, 509 U.S. at 595. There are several factors that the Court may look at to determine reliability. This flexible and non-exhaustive list includes: (a) whether a method consists of a testable hypothesis; (b) whether the method has been subject to peer review; (c) any known or potential rate of error; (d) the existence and maintenance of standards controlling the operation of the methodology; and (e) whether the method is generally accepted;. See <u>Daubert</u>, 509 U.S. at 593-95; <u>United States v. Paul</u>, 175 F.3d 906, 910 (11th Cir. 1999). The Court should tailor its reliability inquiry to the facts of the case, because all of the above factors may not be reasonable measures of the expert's reliability. It depends on the nature of the issue at trial, the expert's particular expertise, and the subject of what she will be testifying about. See <u>Kumho Tire</u>, 526 U.S. at 150, 152.

Finally, the Court must determine the testimony's *helpfulness*: whether the testimony would be relevant to assist the jury in determining a fact in issue. See <u>United States v. Pendergraft</u>, 120 F. Supp. 2d 1339, 1344 (M.D. Fla. 2000). Helpfulness requires that the testimony would assist a lay juror to determine intelligently a particular disputed fact, or to understand the

evidence in the case.  See United States v. Falcon, 245 F. Supp. 2d 1239, 1245 (S.D. Fla. 2003).

**III.   ANALYSIS**

   **A.   The expert is qualified to testify about the nature of Plaintiff's PTSD and how it relates to his employment.**

Defendant speaks at length in its motion in limine concerning Priddy's supposed lack of qualification to testify about a mental health diagnosis, i.e., that she diagnosed Defendant with PTSD (see Mot., pp. 11-14).  In doing so, Defendant forgets that an expert must be qualified to testify competently *regarding the matters she intends to address*.  Plaintiff's proposed expert witness disclosure, as brought out through Priddy during Defendant's deposition of her, states that she would "testify about [Plaintiff]'s mental health . . .," and "as his treating therapist, will provide testimony as to nature, cause, and extent of [Plaintiff]'s mental health condition."  Furthermore, the disclosure states, "Based on Ms. Priddy's specialized knowledge and training and having examined and treated the plaintiff, she is expected to testify about the effects of plaintiff's mental condition as it relates to, inter alia, his employment at" Defendant (see Deposition, p. 7, ln. 6-16).

As a licensed clinical social worker, Priddy is qualified to testify, for example, that Plaintiff's symptoms were exacerbated by Defendant firing him.

5

This is similar to the unremarkable rule, as stated by a case Defendant itself cites at length (see Mot., p. 12, 14-15), that an LCSW can testify that someone's symptoms, like depression, fearfulness, etc., were caused by an employer's actions.  See, e.g., Nemeth v. Citizens Fin. Grp., No. 08-CV-15326, *5 (E.D. Mich., Aug. 10, 2012) (social worker could testify about Plaintiff's "factual symptoms that she observed or that Plaintiff reported to her, i.e. tearful, depressed, upset, crying, sleepless etc., on which she based her diagnosis of depression/anxiety," and to her conclusion that "these symptoms were caused by Plaintiff's job loss" and other job-related factors); see also, e.g., Templeton v. Bishop of Charleston, No. 2:18-cv-02003-DCN (D.S.C., Aug. 5, 2021) (social worker could testify about repressed memory and her opinions as to its scientific validity, and opine that plaintiff's behavior and reported symptoms were consistent with others who had suffered abuse or dissociative amnesia, but she could not testify that she diagnosed plaintiff with dissociative amnesia or that he "has had" the condition).  As such, Defendant's objections to Priddy's qualifications to testify on the basis of Daubert should be rejected.

 The Court should also reject Defendant's claim that Priddy is unqualified because she is "unfamiliar with the essential features of PTSD" (Mot., p. 14 [emphasis omitted]).  Read as a whole and in context, Priddy indicated during the deposition that Plaintiff's PTSD symptoms were causally related to seeing

6

his brother, who worked on the railroad with Plaintiff, die of a heart attack because of what Plaintiff believed was due to working (Deposition, pp. 14-16). One of the diagnostic criteria for PTSD as listed in the DSM-V is "[e]xposure to actual or threatened death" by "[d]irectly experiencing the traumatic event(s)," or "[w]itnessing, in person, the event(s) as it occurred to others." And Defendant does not appear to contest that Plaintiff has, in fact, been diagnosed with PTSD by his treating psychiatrist, Dr. Sasi Nayudu, a diagnosis possibly agreed upon by their own expert, psychologist Dr. Michael Herkov (see Mot., pp. 8, 22).

Thus, in context, Priddy simply testified that work pressure, anxiety about workplace safety, anxiety about his own health, and inconsiderate supervisors, were reported symptoms that related to that traumatic event. There is nothing novel about a treating social worker testifying to such reports from a patient.  Cf. Naquin v. Elevating Boats, LLC, Civ. No. 10-4320, *18 (E.D. La., May 11, 2012) (discussed in Def. Mot., pp. 13-15) (LCSW could not testify to diagnosis, but "based on the extended period of time over which she counseled and observed Plaintiff," could offer "lay witness" testimony "regarding her observations during the course of treatment and the duration of any symptoms").

7

**B.     Priddy is competent to testify reliably about her methodology in assessing Plaintiff's mental health condition.**

Defendant asserts that Priddy cannot testify reliably about her diagnosis of PTSD.  As noted supra, this is not the subject on which Priddy has been offered to testify.  As noted supra, there is nothing novel, cf. In re 3M Combat Arms Earplug Prods. Liab. Litig., No. 3:19md2885, *67 (N.D. Fla., Feb. 28, 2021) (and see Def. Mot., p. 11), about a social worker examining a patient and talking about how the patient's symptoms have affected their life.

**C.     Priddy's testimony will be helpful to the jury in understanding Plaintiff's symptoms and behavior.**

Contrary to Defendant's assertion, Priddy's testimony about Plaintiff's symptoms, conduct, and behavior, and how Defendant's employment action affected those symptoms, conduct, and behaviors, would not confuse or mislead the jury.  The cases relied upon by Defendant for the helpfulness prong of the Daubert analysis (see Mot., pp. 21-22) mainly speak to reliability.  Here, in contrast, Priddy's testimony would be specifically relevant to the damages and injury that Plaintiff has suffered from Defendant's illegal actions.  Cf. Prosper v. Martin, 989 F.3d 1242, 1250 (11th Cir. 2021) (doctor's opinion that individual shot by police was suffering from medical condition, and was not intoxicated, was not relevant to issue of whether officer acted reasonably on basis of what he knew at the time).  Priddy's testimony about her

8

observations and treatment of Plaintiff would be "clearly beyond the reach of the average lay juror who will not have" her "technical" social work "experience and knowledge."  See Halaoui v. Renaissance Hotel Operating Co., No. 6:13-cv-1839-Orl-40TBS, *5 (M.D. Fla., May 13, 2015) (board-certified forensic psychiatrist with decades of psychiatric and psychological experience was "certainly capable of assisting the jury" in case of allegedly sexually-harassed employee).

**IV.   Conclusion**

Ann Priddy, L.C.S.W., is qualified to testify concerning Plaintiff's symptoms, conduct, and behavior, and how Defendant's termination of Plaintiff affected those symptoms, conduct, and behavior.  Priddy is reliable because social work methodology in this area is well known and not novel.  And her testimony would aid the jury in understanding Plaintiff's symptoms and behavior, and how Defendant's conduct affected him, all of which is beyond the capacity of the average lay juror.  As such, the Court should deny Defendant's motion in its entirety.

Respectfully submitted,

*/s/Alisa D. Wilkes*
Alisa D. Wilkes, Esq.
FL Bar No. 81747

>13400 S. Sutton Park Dr.,
>Suite 1204
>Jacksonville, FL 32224
>Office: 904-620-9545
>Fax: 904-404-8321
>Email: Alisa@wilkesmee.com
>service@wilkesmee.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent to C. Ryan Eslinger at reslinger@miltonleach.com; aaustin@miltonleach.com on this 25th day of October, 2021.

>*/s/ Alisa D. Wilkes*
>Alisa D. Wilkes, Esq.