# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

JOEY LEE NIX,

     Plaintiff,

v.                               Case No. 3:20-cv-250-BJD-JBT

CSX TRANSPORTATION, INC.,

     Defendant.

_____/

## <u>ORDER</u>

**THIS CAUSE** is before the Court on Defendant's Motion for Partial Summary Judgment and/or Motion <u>in Limine</u> (Doc. 32) filed October 29, 2021; Plaintiff's Response to Defendant's Motion for Partial Summary Judgment and/or Motion <u>in Limine</u> (Doc. 35) filed November 18, 2021; Defendant's Motions <u>in Limine</u> (Docs. 30, 37, 38) and Plaintiff's responsive briefing (Docs. 31, 40, and 42).

### A.  Background

Plaintiff sues Defendant for damages under the Federal Railroad Safety Act, 49 U.S.C. § 20109. (<u>See generally</u> Doc. 1). Defendant employed Plaintiff for 16 years as an engineer. <u>Id.</u> at ¶¶ 7–8. As an engineer, Plaintiff was responsible for inspecting, monitoring, and operating locomotives. <u>Id.</u> at ¶ 8.

Plaintiff reported to work for Defendant on January 21 and 22, 2019. Id. at ¶¶ 10, 14. On January 21, Plaintiff was to complete his job duties with a conductor present, but no conductor arrived. Id. at ¶¶ 10–11. Plaintiff remained at the yard office because no conductor arrived. Id. at ¶¶ 11–12. On January 22, Plaintiff and a conductor reported for duty. Id. at ¶ 14. It was then that Plaintiff noticed and reported excess oil leaking from a locomotive engine onto the ground (Safety Violation). Id. at ¶ 14.

On January 23, 2019, Defendant placed Plaintiff on a three-day suspension for failing to turn certain switches off when Plaintiff left the locomotive on January 22. Id. at ¶ 17. Also on January 23, Defendant removed Plaintiff from service "for providing false information related to the condition of the locomotives." Id. at ¶ 16. On January 24, 2019, the Federal Railroad Administration (FRA) inspected Defendant's premises and observed the Safety Violation Plaintiff reported the previous day. (Doc. 35.3 at 13–19).[1]

On February 14, 2019, Defendant "held an investigatory hearing required by the applicable collective-bargaining agreement to determine whether [Plaintiff] was responsible for failing to report a non-complying condition on January 21 he later reported on January 22, 2019." (Doc. 32 at 2). After the formal investigation, Defendant terminated Plaintiff's

---

[1] It is disputed as to whether Plaintiff reported the oil leak to Federal Railroad Administration. (See generally Doc. 38); (but see Docs. 1 at ¶ 14; 40 at 5).

employment on March 6, 2019. (Docs. 1 at ¶ 16; 35.3 at 1). Plaintiff argues he was terminated in retaliation for reporting the Safety Violation. Id. at ¶¶ 14–17. In Defendant's termination letter, Defendant explains Plaintiff was terminated because he "failed to promptly report a non-complying condition and willfully neglected [his] duties." (Doc. 35.3 at 1).

After Plaintiff's dismissal, he used his "collectively bargained right to appeal" his termination to a Public Law Board, specifically the National Railroad Adjustment Board. (See Docs. 32 at 2; 32.1).[2] The Board overturned Defendant's termination. (Doc. 32.1 at 6). Plaintiff's full award was employment reinstatement with his seniority unimpaired but "without backpay[,]" his termination "reduced to a lengthy unpaid suspension[,]" and his return-to-work had to "comply with any [of Defendant's] return-to-work protocols." Id. at 5.

On January 5, 2021, in accordance with the Board's award, Defendant allowed Plaintiff to return to work, but Plaintiff "was required to undergo a return-to-work physical including a drug screen." (Doc. 32 at 2; see also Doc. 32.2 at 2). On April 11, 2021, Plaintiff "was found to be medically

---

[2] Specifically, the Adjustment Board reviewed Plaintiff's claim which sought "full reinstatement" of employment with Defendant. Plaintiff sought reinstatement to include "removal of all Record of Discipline administered by [Defendant] . . . from [Plaintiff's] Personal Service Record, full pay for all time lost, cumulative vacation and personal leave day rights undisturbed, seniority standing and progression unimpaired, all Health and Welfare benefits intact and unreduced, full restoration of all other rights" associated with Plaintiff's employment with Defendant. (Doc. 32.1 at 2).

unqualified" to return to work because he was taking Klonopin as prescribed. (Doc. 32 at 2; see also Doc. 35.4). Plaintiff's psychiatrist, Dr. Nayudu, "has testified that [Plaintiff] was taking medication for his [post-traumatic stress disorder (PTSD)] related to [Plaintiff having observed] his brother's death, not related to [Plaintiff]'s discharge or termination." (Doc 32 at 3). Plaintiff disputes these facts, claiming his inability to return to work is also based on the emotional distress his termination has caused. (See Doc. 35 at 3–8.)

In his Complaint, Plaintiff brings one claim against Defendant for violating the Federal Railroad Safety Act and seeks compensatory damages, including compensation for any special damages; litigation costs including witness fees and reasonable attorney fees; and punitive damages. (Doc. 1 at ¶ 26).

## B.    Discussion

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919  (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's

position is insufficient to defeat a motion for summary judgment."
Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

When the moving party has discharged its burden, the non-moving party must point to evidence in the record to demonstrate a genuine dispute of material fact. Id. Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing [the motion]." Hayes v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

Here, Plaintiff brings one claim under the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20109. (See generally Doc. 1). Defendant moves for partial summary judgment on Plaintiff's claims for future wage loss and damages. (See Doc. 32).

"The FRSA was enacted 'to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents.'" Winch v. Dir., OWP, 725 Fed. App'x 768, 769 (11th Cir. 2018) (citing 49 U.S.C. § 20101). The FRSA prohibits "an employer from disciplining an employee" who in good faith reports "a hazardous safety or security condition." 49 U.S.C. § 20109(b)(1)(A).

To prevail on a retaliatory claim under the FRSA, a plaintiff "must show by a preponderance of the evidence that: (1) he engaged in protected activity; (2) the employer knew that he engaged in the protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the adverse action." Id. (citing Araujo v. New Jersey Transit Rail Operations, 708 F.3d 152, 157–58 (3d Cir. 2013)).[3]

_____

[3] The Eleventh Circuit has not yet decided what a plaintiff must prove to prevail on an FRSA claim. See Winch v. Dir., OWP, 725 Fed. App'x 768 (11th Cir. 2018). The Third Circuit's test in Araujo has been adopted by both the Fourth and Sixth Circuits. See Lee v. Norfolk S. Ry. Co., 802 F.3d 626, 631 (4th Cir. 2015) (quoting Araujo, 708 F.3d at 157–58); Consol. Rail Corp. v. U.S. Dep't of Labor, 567 Fed. App'x 334, 337 (6th Cir. 2014) (citing Araujo, 708 F.3d at 157–58); see also BNSF R. Co. v. U.S. Dep't. of Labor, 816 F.3d 628, 638–40 (10th Cir. 2016) (explaining that to prevail on a FRSA claim, "a complainant must show that the protected activity was a 'contributing factor' in the adverse employment action"). But

1.     *The National Railroad Adjustment Board's Decision*

As a preliminary matter, the Court must first determine the effective termination date before discussing Plaintiff's claims for damages. This Court first looks to the award from the Public Law Board, specifically the National Railroad Adjustment Board for guidance. Defendant argues that because Plaintiff used the Public Law Board, Plaintiff already received a remedy from an arbitrator, thereby cutting off any damages related to Plaintiff's termination. (See Doc. 32 at 8).

Under the Railway Labor Act, employees may submit grievances to an Adjustment Board for arbitration. Gunther v. San Diego & A.E. Ry. Co., 382 U.S. 257, 260–62 (1965); see also 45 U.S.C. § 153 (h). Adjustment Board rewards are "final and binding upon both parties to the dispute." 45 U.S.C. § 153(m); see also Gunther, 382 U.S. at 372 ("This Court time and again has emphasized and re-emphasized that Congress intended minor grievances of railroad workers to be decided finally by the Railroad Adjustment Board."). Parties who appear before the Adjustment Board may appeal the Board's rewards, but in appealing to a district court, "the findings and order of the

_____

see Kuduk v. BNSF Ry. Co., 768 F.3d 786 (8th Cir. 2014) (finding that "the contributing factor that an employee must prove is intentional retaliation").

division shall be conclusive on the parties" except in narrow circumstances not applicable to this instant case. See 45 U.S.C. §§ 153(p)–(q).[4]

"A minor dispute in the railroad industry is subject to compulsory and binding arbitration before the National Railroad Adjustment Board . . . or before an adjustment board established by the employer and the unions representing the employees." Consol. Rail Corp. v. Ry. Labor Execs' Ass'n., 491 U.S. 299, 303 (1989) (citing 45 U.S.C. § 153 Second Section). These Boards have "exclusive jurisdiction over minor disputes." Id. at 304. Minor disputes are those that "may be conclusively resolved by interpreting the existing [collective-bargaining] agreement." Id. at 305.

Here, Defendant argues, and Plaintiff does not dispute, that the investigatory hearing on February 14, 2019 was done in compliance with a collective-bargaining agreement. (See Doc. 32 at 2). Additionally, after Plaintiff's employment was terminated, Plaintiff availed himself to the Adjustment Board under his collectively-bargained rights. (See Docs. 32 at 2; 32.1). The Adjustment Board reviewed Plaintiff's claims for full reinstatement. (See Doc. 32.1 at 2).  Specifically, the Adjustment Board reviewed whether Plaintiff was entitled to "full reinstatement" of employment with Defendant to include "removal of all Record of Discipline

---

[4] Plaintiff does not appeal the Board's decision in this suit, so this Court will evaluate whether the Board's award is binding rather than review the Board's decision in full.

administered by [Defendant] . . . from [Plaintiff's] Personal Service Record, full pay for all time lost, cumulative vacation and personal leave day rights undisturbed, seniority standing and progression unimpaired, all Health and Welfare benefits intact and unreduced, full restoration of all other rights" associated with Plaintiff's employment with Defendant. (Doc. 32.1 at 2).

The Adjustment Board reviewed Plaintiff's claim for reinstatement as it was authorized to do under 45 U.S.C. § 153. See id. at 2 ("This Division of the Adjustment Board has jurisdiction over the dispute involved herein."). In its findings, the Board determined Defendant "reasonably concluded" that Plaintiff "failed to inspect his locomotives on January 21, 2019," but that Plaintiff's actions were not so severe to warrant Plaintiff's employment termination. Id. at 5. The Board concluded Plaintiff's employment "dismissal [was] to be reduced to a lengthy unpaid suspension." Id. The Board awarded Plaintiff reinstatement in accordance with Defendant's return-to-work protocols, and such reinstatement was to be without backpay. Id.

As the Board reviewed Plaintiff's claim under the Railway Labor Act, 45 U.S.C. § 153, this Court cannot dispute the findings and award the Board offered Plaintiff. See Gunther, 382 U.S. at 372. Specifically, the Adjustment Board's findings and award preclude this Court's review of reinstatement because the Board granted such reinstatement, provided Plaintiff comply with Defendant's return-to-work protocols. Additionally, the Adjustment

Board's findings and award preclude this Court from reviewing any claims for backpay related to Plaintiff's employment termination. (See Doc. 32.1 at 5). Specifically, Plaintiff cannot make any claims for backpay because the Adjustment Board's award only specified that Plaintiff would be reinstated upon complying with Defendant's return-to-work policies. As Plaintiff was never reinstated fully, Plaintiff is not entitled to any lost or future wages.[5]

Under the FRSA, a plaintiff is entitled to the following remedies: "(A) reinstatement with the same seniority status that the employee would have had, but for the discrimination; (B) any backpay, with interest; and (C) compensatory damages, including compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees." 49 U.S.C. § 20109(e)(2). A plaintiff may additionally recover punitive damages, not to exceed $250,000. 49 U.S.C. § 20109(e)(3). Of the damages allowed under the FRSA, all that remain for this Court to adjudicate are compensatory damages and punitive damages. Accordingly, Defendant's Motion for Partial Summary Judgment

---

[5] The Adjustment Board granted Plaintiff reinstatement, should he comply with Defendant's return-to-work policies. (Doc. 32.1 at 5). The record reflects Plaintiff did not comply with Defendant's policies when Plaintiff did not pass a mandatory drug test. (See Doc. Doc. 32 at 2 (showing the reason Plaintiff was denied reinstatement on April 11, 2019 was because he failed a drug test due to Plaintiff's prescribed medication)); (see also Docs. 35 at 4; 28.1 at 14; 35.2 at 37–39 (showing that Plaintiff does not dispute that that he takes Klonopin as prescribed due to PTSD related to observing his brother's death, which is unrelated to the facts of this case)). Accordingly, Plaintiff's claims for future wage loss are precluded as the Adjustment Board already adjudicated the issue.

and/or Motion in Limine (Doc. 32) will be granted as to Plaintiff's claims for
reinstatement, backpay, and future wage loss.

        2.     *Future Medical Expenses*

     In Defendant's Motion for Partial Summary Judgment and/or Motion in
Limine, (Doc. 32), Defendant argues Plaintiff's medical expenses are not
related to Plaintiff's FRSA claims. (Doc. 32 at 7). It is uncontroverted that
Plaintiff sought psychiatric treatment for witnessing his brother's death. (See
Docs. 29.1 at 6–12; 35 at 4). Plaintiff himself and his treating medical
professionals all testify that Plaintiff's psychiatric treatment was ultimately
related to Plaintiff's brother's death. (See Docs. 28.1 at 14; 29.1 at 6–12; 35.2
at 20). However, Plaintiff also provides testimony from Ann Priddy, a
licensed clinical social worker, that Plaintiff's employment termination is
"exacerbating" Plaintiff's mental health issues. (See Doc. 28.1 at 62).

     The factual question remains as to whether Plaintiff's mental health
issues were exacerbated by Plaintiff's employment termination. At this time,
summary judgment as to future medical expenses is inappropriate. See Fed.
R. Civ. P. 56(a).

        3.     *Compensatory Damages for Economic Loss*

     The FRSA allows an employee who prevails in a retaliatory claim to
recover "compensatory damages, including compensation for any special
damages sustained as a result of the discrimination, including litigation costs,

expert fees, and reasonable attorney fees." 49 U.S.C. § 20109(e)(2)(B–C).

The Eleventh Circuit has determined that compensatory damages are "those damages that will compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong or injury." McMillian v. F.D.I.C., 81 F.3d 1041, 1055 11th Cir. 1996) (citation and quotations omitted). Additionally, "[i]t should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence."[6] State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003).

Plaintiff seeks economic damages for 1) selling his two vehicles, 2) withdrawing money from his 401(k), and 3) opening a company that continues to operate at a loss. (Doc. 32 at 5). As to the sale of Plaintiff's cars and withdrawing money from his 401(k), Plaintiff asserts he would not have incurred these losses but for his unjust dismissal. (Doc. 35 at 9). However, the Adjustment Board's award determined Plaintiff's termination was

---

[6] The record does not seem to reflect that Plaintiff will likely be able to recover punitive damages. However, the Court as a matter of law, cannot rule punitive damages out at this point in time.

"reduced to a lengthy unpaid suspension." (Doc. 32.1 at 5).

In accordance with the Adjustment Board's award, Plaintiff is not entitled to lost or future wages. Plaintiff is also not entitled to recover damages for selling his cars and retrieving funds from his 401(k). Plaintiff represents that after he was terminated, he sold two vehicles and withdrew funds for living expenses. (See Doc. 32.3 at 4). Even if Plaintiff was reinstated, he would not have been entitled to backpay as his termination was reduced to a lengthy unpaid suspension by the Adjustment Board. (See Doc. 32.1 at 5). Plaintiff's economic damages related to selling his cars and withdrawing money from his 401(k) are precluded by the Adjustment Board decision. See McMillian, 81 F.3d at 1055; see also Gunther, 382 U.S. at 372.

Finally, as to Plaintiff's claims for damages for his company that continues to operate at a loss, Plaintiff has not demonstrated how the company's economic performance is related to the facts of this case. Plaintiff has not shown a causal relationship between his employment termination and the company's performance. See Campbell, 538 U.S. at 416 ("Compensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct.") (quotations omitted). Accordingly, without this causal connection, this Court will bar Plaintiff from recovering damages associated with his company

operating at a loss.

In sum, Plaintiff's claims for compensatory economic damages will all be barred.

### 4. *Compensatory Damages for Emotional Distress*

The Eleventh Circuit has determined that testimony from a plaintiff to support an award for emotion distress "must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a violation occurred supports an award for compensatory damages." McLean v. GMAC Mortg. Corp., 398 Fed. App'x 467, 471 (11th Cir. 2010).

Plaintiff's counselor opined that Plaintiff was under stress about returning to work for Defendant. (See Doc. 28.1 at 33). She also opined that Plaintiff's employment termination is "exacerbating" Plaintiff's mental health issues. (See Doc. 28.1 at 62). Plaintiff's psychiatrist opined that a return to gainful employment would have been beneficial to Plaintiff. (See Doc. 29.1 at 22). But Plaintiff's psychiatrist also stated that "going back to work was not part of [the] treatment plan." Id. Plaintiff himself testified that he began treatment with his counselor related to the stress of his brother's death. (See Doc. 35.2 at 20). When Plaintiff was asked about the emotional distress he

claims is related to his termination, Plaintiff expresses that he was generally stressed about being unemployed. (See Doc. 35.2 at 25). The evidence presented by Plaintiff is enough to show that there is a genuine issue of material fact that Plaintiff's emotional distress is at least exacerbated by his unemployment. Accordingly, Defendant's motion as to emotional distress damages will be denied.

5.    *Defendant's First <u>Daubert</u> Motion <u>in Limine</u> to Exclude the Opinions of Plaintiff's Expert Witness, Ann Priddy*

Expert testimony is governed by Rule 702 of the  Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.[7] In <u>Daubert</u>, the Supreme Court explained that Rule 702 imposes an obligation on a trial court to act as gatekeeper, to ensure that

---

[7] The language of Rule 702 was revised in 2011 for stylistic reasons only, with "no intent to change any result in any ruling on evidence admissibility." Fed. R. Evid. 702

any and all scientific testimony or evidence admitted is not only relevant, but

reliable. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993).[8]

In evaluating the admissibility of expert testimony, a trial court must

consider if:

> (1) the expert is qualified to testify competently
> regarding the matters he intends to address;
> (2) the methodology by which the expert reaches his
> conclusions is sufficiently reliable as determined by
> the sort of inquiry mandated in Daubert; and
> (3) the testimony assists the trier of fact, through the
> application of scientific, technical, or specialized
> expertise, to understand the evidence or to determine
> a fact in issue.

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting City

of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998)); see

also Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340-41

(11th Cir. 2003).[9] "The burden of laying the proper foundation for the

---

advisory committee's notes 2011 Amendments. Thus, case law construing former Rule 702 remains viable and is applicable here.

[8] Although the expert testimony at issue in Daubert was scientific, the Supreme Court held in Kumho Tire Co., Ltd., 526 U.S. 137, that the Daubert analysis and a trial judge's role as gatekeeper "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire, 526 U.S. at 141.

[9] The four guiding factors for district courts to consider when evaluating an expert's methodology are:

> (1) whether the expert's methodology has been tested or is
> capable of being tested; (2) whether the theory or technique used
> by the expert has been subjected to peer review and publication;
> (3) whether there is a known or potential error rate of the
> methodology; and (4) whether the technique has been generally
> accepted in the relevant scientific community.

admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1107 (11th Cir. 2005) (internal quotation and citations omitted).

Defendant moves to exclude Ann Priddy's expert testimony, arguing that 1) "as a social worker, Priddy is unqualified to diagnose or opine as to the cause of PTSD," 2) "Priddy failed to use reliable methodology to arrive to her opinions," and 3) "her opinion would not help [a] jury." (Doc. 30 at 9).

Plaintiff offers Ms. Priddy to opine about Plaintiff's mental status and testify as to the "nature, cause, and extent of Plaintiff's mental health condition." (Doc. 31 at 5). Plaintiff claims that Ms. Priddy will also explain the "effects of [P]laintiff's mental condition as it relates to" his employment with Defendant. Id. Plaintiff states Ms. Priddy will not be offered to testify about her diagnosing Plaintiff with PTSD. Id. at 8. Ms. Priddy has examined and treated Plaintiff over a period of time. (See Doc. 23.1 at 7–12). During her treatment, Ms. Priddy collected verbal and written information from Plaintiff. See id. From those notes, Ms. Priddy evaluated Plaintiff and formed opinions on his mental state over time. (See generally Doc. 28.1).

---

Chapman v. Procter & Gamble Distrib., LLC, 766 F.3d 1296, 1305 (11th Cir. 2014), cert. denied, 135 S. Ct. 2312, 191 L. Ed. 2d 1000 (2015).

What is unclear from the record is Ms. Priddy's background and qualifications as a mental health service provider. Accordingly, Defendant's Daubert Motion will be granted in part. To the extent that Ms. Priddy would opine to actually diagnosing Plaintiff with a mental disorder, her testimony will be barred. Additionally, before Ms. Priddy is offered as a witness, she will be proffered by the Court to determine whether her testimony will be tailored to only opine about her observations of and treatment plans for Plaintiff. She may be allowed to provide testimony about any changes in Plaintiff's mental state over time, as long as it does not amount to opining about a medical diagnosis. See Daubert, 509 U.S. at 589.

> 6. *Defendant's Second and Third Motions in Limine to a) Preclude Evidence and Arguments Relating to Causation Standards and b) Exclude Evidence Relating to Administrative Proceedings before the Occupational Safety and Health Administration (OSHA)*

"We use the term [in limine] in a broad sense to refer to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." Luce v. United States, 469 U.S. 38, 40, (1984).

Motions in limine should be limited to specific pieces of evidence and not serve as reinforcement regarding the various rules governing trial, or

(re)-addressing substantive motions such as motions for summary judgment. See Royal Indem. Co. v. Liberty Mut. Fire Ins. Co., No. 07-80172-CIV-COOKE, 2008 WL 2323900, at *1 (S.D. Fla. June 5, 2008); see also Stewart v. Hooters of Am., Inc., No. 8:04-CV-40-T-17-MAP, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007) ("Motions [i]n Limine are disfavored; admissibility questions should be ruled upon as they arise at trial. Accordingly, if evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context.") (internal citations omitted); Royal Marco Point 1 Condo. Ass'n v. QBE Ins. Corp., No. 2:07-CV-16-FTM-99SPC, 2011 WL 470561, at *2 (M.D. Fla. Feb. 2, 2011) ("The court excludes evidence on a Motion [i]n Limine only if the evidence is clearly inadmissible for any purpose.").

In light of the preliminary or preemptive nature of motions in limine, "any party may seek reconsideration at trial in light of the evidence actually presented and shall make contemporaneous objections when evidence is elicited." Miller ex rel. Miller v. Ford Motor Co., No. 2:01CV545FTM-29DNF, 2004 WL 4054843, at *1 (M.D. Fla. July 22, 2004).

Defendant moves this Court to preclude evidence and arguments relating to causation standards and to exclude evidence relating to administrative proceedings before OSHA. (Docs. 37, 38). First, the Court will address Defendant's argument that Plaintiff did not exhaust all of the claims

he brings before this Court. (See Doc. 38). Then, the Court will address Defendant's causation argument. (See Doc. 37).

### i. *Exhaustion*

"The FRSA requires an employee to exhaust his administrative remedies with OSHA before filing a complaint in federal court against his employer." Head, 2017 WL 4030580, at *13; see also 49 U.S.C. § 20109(d). "An employee exhausts his FRSA claim 'if the civil claim grows out of or is like or reasonably related to the substance of the allegations in the administrative charge.'" Id. (quoting Fanning v. Potter, 614 F. 3d 845, 851–52 (8th Cir. 2010)); see also Brisbois v. Soo Line R.R. Co., 124 F. Supp. 3d 891, 899 (D. Minn. 2015).

Here, Defendant moves to exclude evidence of Plaintiff's report to the Federal Railroad Administration (FRA). (Doc. 38 at 2). The FRA report is sufficiently and reasonably related to both the OSHA claim and the instant lawsuit. See Head, 2017 WL 4030580, at *13; see also Fanning, 614 F. 3d at 851–52. Accordingly, the Court will consider Plaintiff's claims exhausted and deny in part[10] Defendant's Motion in Limine to exclude evidence of and

---

[10] Defendant also moves to exclude evidence about disciplining Plaintiff on January 23 for failing to turn off certain switches. (Doc. 38 at 3). Plaintiff concedes he does not intend to discuss this particular disciplinary action, so the Court will grant Defendant's motion in Limine and consider this disciplinary issue unexhausted. (See Doc. 40 at 2).

relating to any cause of action not asserted in administrative proceedings before OSHA.

### ii. *Causation*

Defendant moves to preclude evidence and arguments relating to 1) the "contributing factor" causation standard applicable under AIR 21 and 2) the "in whole or in part" standard of causation under 49 U.S.C. § 20109(a) (Doc. 37 at 1). Plaintiff brings suit under both 49 U.S.C. § 20109(a)(1) and § 20109(b). (Doc. 1 at ¶ 23).

First, Defendant argues that 49 U.S.C. § 20109(d)(2) only "incorporates the 'rules and procedures' and 'legal burdens of proof' from [AIR 21] for purposes of administrative actions before the Secretary of Labor under subsection (d)(1)." (Doc. 37 at 5). Defendant then goes on to argue this lawsuit is a "kick-out" action given Plaintiff's history with his OSHA complaint.[11] Id. at 2. Defendant argues that since this is a "kick-out" action, the burdens of proof from AIR 21 do not apply as this is not an administrative action by law. Id. at 5–6.

As previously discussed, while the Eleventh Circuit has not discussed what a plaintiff must prove to prevail on a retaliatory-firing claim under the

---

[11] Plaintiff filed an administrative claim with OSHA on March 22, 2019. More than 210 days had elapsed with no final decision from the agency before Plaintiff filed suit before this Court. (See Doc. 1 at ¶ 4).

FRSA, the Fourth and Sixth Circuits adopt the Third Circuit's reasoning that applies the "contributing factor" causation standard when evaluating FRSA claims. See Araujo, 708 F.3d at 157–58.

Defendant argues that the Sixth Circuit in Lemon, "specifically states that the portions of [AIR 21] incorporated by reference . . . apply only to 'agency actions, not kick-out actions.'" (Doc. 37 at 12) (citing Lemon v. Norfolk S. Ry. Co., 958 F.3d 417 (6th Cir. 2020)). In Lemon, the Sixth Circuit evaluated whether a district court erred in granting summary judgment to a defendant railroad company who allegedly fired an employee for reporting an on-the-job injury. Id. at 418. At issue was whether the employee was indeed fired in retaliation for his report or whether he was fired for lying about the origin of his injury. Id. In determining whether the district court erred or not, the Sixth Circuit recognized that "[t]he parties agree[d] that Lemon must show that his injury report was a 'contributing factor' in the railroad's decision to fire him." Id. at 419.

Beyond the Third, Fourth, and Sixth Circuits, other circuit courts of appeal agree that the "contributing factor" causation standard from AIR 21 is the correct standard to apply. See Tompkins v. Metro-North Commuter R.R. Co., 983 F.3d 74,79–80 (2d Cir. 2020) ("The FRSA also provides a burden-shifting framework for claims brought pursuant to the Act. Under this framework, a plaintiff must 'make[ ] a prima facie showing that any

[protected activity] was a contributing factor in the unfavorable personnel action alleged in the complaint.'"); <u>Yowell v. Admin Rev. Bd., U.S. Dept. of Lab.</u>, 993 F.3d 418 (5th Cir. 2021) (applying the contributing factor analysis to a review of the Administrative Review Board's decision on an employee's FRSA claim); <u>Armstrong v. BSNF Ry. Co.</u>, 880 F.3d 377, 381 (7th Cir. 2018) (stating that an employee must prove his engagement in an activity protected under the FRSA was a contributing factor to his termination to prevail on his FRSA claim); <u>Kuduk v. BNSF Ry. Co.</u>, 768 F.3d 786, 791 (8th Cir. 2014) ("[T]he contributing factor that an employee must prove is intentional retaliation prompted by the employee engaging in protected activity.").

This Court finds Plaintiff's arguments and the overwhelming caselaw to support Plaintiff's arguments persuasive. While this Court is reviewing Plaintiff's claim as a "kick-out" action, to prevail, Plaintiff must show that his reporting safety violations to either or both the FRA and OSHA directly contributed to Plaintiff's employment termination. Defendant's motion will be denied on this argument.   .

Second, Defendant moves to preclude the "in whole or in part" standard of causation applicable under 49 U.S.C. § 20109(a). (Doc. 37 at 1). The FRSA allows a plaintiff to recover if the plaintiff was "discharge[d], demote[d], suspend[ed], reprimand[ed], or in any other way discriminate[d] against . . . if such discrimination is due, *in whole or in part*, to the employee's lawful, good

faith act done" to report what the plaintiff employee "reasonably believes constitutes a violation of any Federal law, rule, or regulation relating to railroad safety or security." 49 U.S.C. § 20109(a)(1) (emphasis added). As the Plaintiff brings claim under 49 U.S.C. § 20109(a), Defendant's argument about precluding arguments about the causation standard under subsection (a) is moot at this time. (See Doc. 1 at ¶ 23).

Accordingly, after due consideration, it is

**ORDERED:**

1. Defendant's Motion for Partial Summary Judgement (Doc. 32) is **GRANTED in part** and **DENIED in part.**

   a. Plaintiff's claims for future lost wages and pay benefits with interest, and lost benefits with interest are **barred.**

   b. Plaintiff's request for reinstatement of employment with Defendant is **barred.**

   c. Plaintiff's claims for compensatory economic damages stemming from 1) selling his two vehicles, 2) withdrawing money from his 401(k), and 3) losing money from his company operating at a loss are **barred.**

   d. Plaintiff's claims for backpay are **barred.**

   e. The motion is otherwise **denied.**

2. Defendant's <u>Daubert</u> Motion <u>in</u> <u>Limine</u> to Exclude the Opinions of Plaintiff's Expert Witness, Ann Priddy (Doc. 30) is **GRANTED in part**.

    a. To the extent that Ms. Priddy would opine to diagnosing Plaintiff with a mental disorder, her testimony will be limited.

    b. Ms. Priddy's testimony will be proffered to the Court to determine whether she is qualified to provide limited testimony in accordance with this Order.

3. Defendant's Second Motion <u>in</u> <u>Limine</u> precluding evidence and argument about causations standards (Doc. 37) is **DENIED**.

4. Defendant's Third Motion <u>in</u> <u>Limine</u> to exclude evidence of and relating to any cause of action not asserted in administrative proceedings before OSHA. (Doc. 38) is **DENIED in part**.

    a. Only Plaintiff's suspension on January 23, 2019 as it relates to not turning off certain switches on a locomotive will be considered unexhausted and inadmissible. The motion is otherwise **denied**.

**DONE** and **ORDERED** in Jacksonville, Florida this 29ᵗʰ day of March, 2022.

BRIAN J. DAVIS
United States District Judge

8
Copies furnished to:

Counsel of Record
Unrepresented Parties